UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANIEL BARRIOS,**<br>　　　　Plaintiff**,**<br>vs.<br>**ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,**<br>　　　　Defendant | CASE NO. 20-cv-04598-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 24 |

　　　　Plaintiff Daniel Barrios brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act.  Currently pending before the Court are the parties' cross-motions for summary judgment.  Barrios requests reversal of the denial of benefits, without a remand for rehearing, for a finding of disability and an award of benefits, or, in the alternative, reversing the decision with a remand for a rehearing.  Defendant requests affirmance of the denial of benefits.

　　　　Having carefully considered the parties' briefing and the administrative record filed in this case, and for the reasons stated below, the Court **DENIES** the plaintiff's motion, **GRANTS** the defendant's motion, and **AFFIRMS** the ALJ findings.

**I.　BACKGROUND**

　　　　Barrios protectively filed an application for SSDI on April 5, 2018, alleging that he had been disabled since February 27, 2018.  (Administrative Record ("AR"), Dkt. No. 14, at 15.)  The Social Security Administration ("SSA") denied Barrios's claim, initially, on July 27, 2018, and,

upon reconsideration, on October 17, 2018. (Exs. 3B and 5B.) Barrios subsequently requested a hearing before an administrative law judge ("ALJ"), which was held on June 12, 2019 before ALJ Cheryl Tompkin. (*Id.* at 31-58.) The ALJ heard testimony from Barrios and a vocational expert. (*Id.* at 51-58.) By written decision dated September 4, 2019, the ALJ concluded that Barrios had not been under a disability, as defined in the Act, from April 5, 2018 through the date of the decision. (*Id.* at 12–26.) Barrios's request for Appeal Council review was denied on June 23, 2020, rendering the ALJ's decision as the final decision of the Commissioner. (*Id.* 1–9.)

While the Court has carefully reviewed the administrative record in its entirety, it does not attempt to summarize the 400+ page record in this case. Nor is a full factual summary necessary for the Court to address the motions. Instead, specific facts relevant to disposition of the motions are included in the discussion below.

## II. LEGAL FRAMEWORK

### A. STANDARD OF REVIEW

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. STANDARD FOR DETERMINING DISABILITY

SSDI is available for an individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E), 1381a. "To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (the "five-step sequential evaluation process to determine disability" applies to Title II and Title XVI claims). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite her limitations. *Ghanim*, 763 F.3d at 1160 n.5. "The burden of proof is on the claimant at steps one through four but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. ALJ'S DECISION

By written decision dated September 4, 2019, the ALJ concluded that Barrios had not been under a disability from April 5, 2018 through the date of the decision. (AR at 26.) At step one, the ALJ found that he had not engaged in substantial gainful activity since April 5, 2018, the alleged onset date. (*Id.* at 17.) At step two, the ALJ found that Barrios suffered from a severe medically determinable impairment, namely, cognitive disorder, status post traumatic brain injury

3

from 2007, adjustment disorder, and left knee osteoarthritis. (*Id.* at 18.) At step three, the ALJ concluded that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Act's listed impairments. (*Id.*)

Prior to step four, the ALJ assessed that Barrios had the RFC to perform light work with the following exceptions: he can understand, remember and carry out simple, routine tasks, involving simple work-related decisions, is able to adapt to routine workplace changes, and can occasionally interact with supervisors, coworkers, and the public. (*Id.* at 20.)[1] In making this RFC determination, the ALJ found that Barrios' medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that his statements were not entirely consistent with the medical evidence in the record. (*Id.* at 21.) The ALJ based these findings upon consideration of testimony by Barrios regarding his alleged symptoms and limitations, a statement by his brother Rafael Garcia regarding the same, certain of Barrios' medical records, and RFC assessments completed by agency physicians as well as Barrios' providers. (*Id.* at 21–24.)

At step four, the ALJ determined that Barrios was not capable of performing his past relevant work as a warehouse worker, which exceeds his residual functional capacity. (*Id.* at 25.) In the alternative, at step five, the ALJ arrived at a "not disabled" finding based on the Medical-Vocational Rules framework. (*Id.* at 26.) In addition, based on the vocational expert's testimony, the ALJ found that Barrios could perform other jobs existing in the national economy, namely, a housekeeping cleaner, merchandise marker, and small parts assembler. (*Id.* at 26.) Thus, the ALJ

---

[1] Relevant here is "light work," which is defined by agency regulations as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

concluded that he had not been disabled during the relevant period. (*Id.*)

IV. **ANALYSIS**

Plaintiff alleges the following errors committed by the ALJ: (1) improper rejection of medical opinions; (2) improper rejection of testimony by plaintiff; (3) improper rejection of testimony by third-party witness; and (4) unsupported findings to support the ALJ's step five findings. The Court addresses each in turn.

### A.     Medical Opinions

In weighing medical opinions, for claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence. 20 C.F.R. §§ 404.1520c(a). The new regulations provide that the ALJ will no longer give any specific evidentiary weight to medical opinions or prior administrative medical findings, including those from treating physicians. *Id.* Instead, the ALJ must consider the persuasiveness of each medical opinion and prior administrative medical finding, regardless of the source. 20 C.F.R. §§ 404.1520c(c). The new regulations instruct ALJs to consider multiple factors, including supportability, consistency, the source's relationship with the claimant, length of the treatment relationship, frequency of examinations, any specialization of the source, and other factors. *Id.* Supportability and consistency of the opinion are the most important factors, and the ALJ must articulate how they considered those factors in determining the persuasiveness of each medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520a(b). Explanation of the consideration of the other factors is optional, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.*

Here, Barrios specifically challenges the ALJ's rejection of the opinion of his treating physician, Dr. McKeever, and whether appropriate weight was given to Dr. Blank's opinion. The Court considers each medical source in turn.[2]

---

[2] Barrios seems to argue in passing that the ALJ's rejection of Dr. Howard's testimony was also improper. The Court finds that the ALJ did not err in rejecting Dr. Howard's decision because it fell outside the relevant time. As the ALJ pointed out, Dr. Howard's opinion, dated January 22, 2008, offers evidence regarding Barrios's condition in January 2008, approximately ten years prior to Barrios's onset date.

5

### 1. Dr. McKeever (Treating Physician)

With respect to Dr. McKeever, the Court finds that the ALJ did not err in finding Dr. McKeever's opinion unpersuasive. Based on Dr. McKeever's medical source statement dated June 4, 2019, Dr. McKeever opined that Barrios suffered from a mild neurocognitive disorder due to a traumatic brain injury and unspecified adjustment disorder. (AR at 406.) Dr. McKeever also opined that Barrios will likely experience marked limitations in his ability to understand, remember, and carry out detailed instructions. (*Id.* at 407-08.) Based on this information, Dr. McKeever assessed that Barrios was likely to be absent from work more than four days per month. (*Id.* at 409.) The ALJ found Dr. McKeever's unpersuasive because "it was excessively restrictive and quite conclusory." (*Id.* at 23.) The ALJ also reasoned that "Dr. McKeever may have relied too heavily on the subjective report of symptoms and limitations provided by the claimant" and that "Dr. McKeever's opinion is not supported by treatment records." (*Id.*)

The ALJ's reasoning for discounting Dr. McKeever's assessment is sound. The ALJ explained that Dr. McKeever's assessment was excessively restrictive and conclusory. *See Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion.") The ALJ also noted that Dr. McKeever's opinion appeared to be largely supported by Barrios's self-reported symptoms and limitations; those limitations that the ALJ considered and found to be "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 21.) Further, Dr. McKeever did not cite to any medical records in support of his opinion, nor did he mention that he had reviewed any of Barrios's prior medical records. Thus, the Court finds that the ALJ provided sound reasons for rejecting Dr. McKeever's opinion. Accordingly, the ALJ's assessment of Dr. McKeever's opinion was proper.

### 2. Dr. Blank (Examining Physician)

The ALJ properly captured the degree of limitations opined in Dr. Blank's report. Barrios argues that the ALJ erred in finding that he was still able to engage in simple, routine tasks notwithstanding Dr. Blank's opinion that Barrios was moderately impaired in the following areas: in his ability to adapt to changes in job routine, maintain adequate attention/concentration,

withstand the stress of a routine workday, interact appropriately with coworkers, supervisors, and the public on a regular basis, and in his ability to adapt to changes, hazards, or stressors in a workplace setting.  (*Id.* at 333.)

The Court finds that Dr. Blank's opinion supports, rather than contradicts, the ALJ's RFC findings.  The ALJ's RFC finding notes that Barrios's cognitive disorder, post traumatic brain injury, and adjustment disorder limits Barrios to "simple, routine tasks involving simple, work-related decisions" and that Barrios "is able to adapt to adapt to routine work place changes" and can "occasionally interact with supervisors, coworkers, and the public." (*Id.* at 24.)   The Court finds this assessment consistent with Dr. Blank's evaluation and limitations assessment which opines that Barrios's ability to follow simple instructions and simple one or two step repetitive tasks unimpaired.  Accordingly, the ALJ properly assessed and credited Dr. Blank's opinion.[3]

**B. Barrios's Symptom Testimony**

"When an Administrative Law Judge (ALJ) determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Id.*  Instead, to satisfy the "clear and convincing reasons" requirement, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility

---

[3] The Court further finds, contrary to Barrios' assertion, that Dr. McKeever's opinion is not the same as that of Dr. Blank's.  Barrios argues that Dr. Blank's assessment of some of his limitations as "moderate" are the "same degree of functional impairment" as Dr. McKeever's "marked" limitation.  *See* Mot. at 12.  This argument does not persuade.  Dr. Blank's report defines a "moderate" limitation as one that is "functionally debilitating" whereas Dr. McKeever's report defines a marked limitation as one that will "impair the effective performance of the task incrementally for a total of more than 20% of an 8-hour workday or 40 hour workweek."  Barrios does not explain how, or provide evidence that, Dr. Blank's "moderate" limitation has a similar functional impairment as Dr. McKeever's "marked" limitation.  Thus, the Court does not find that a "marked limitation" is the same as a "moderate limitation."

determination." *Id.* A failure to do so constitutes "legal error," *id.*, and this error is not harmless where the ALJ's failure to specify his or her reasons for rejecting claimant testimony deprives the courts of the opportunity to review those reasons "meaningfully." *Id.* at 492.

Barrios argues that, because the ALJ did not find that he was malingering and also found that the symptoms he described during his testimony could reasonably be caused by his medically determinable impairments, the ALJ was required to provide "clear and convincing reasons" for rejecting his symptom testimony. Barrios contends that the ALJ's failure to provide "clear and convincing reasons" for rejecting his symptoms testimony was legal error.

The Court agrees with the statement of the standard itself. That said, the Court finds that the ALJ properly gave "clear and convincing" reasons for discrediting Barrios's testimony, explaining that it was not entirely consistent with the evidence in the record. (*See* AR at 21-22.) The ALJ adequately described the aspects of Barrios' testimony that she did not find entirely consistent with the evidence in the record. (*Id.*) In evaluating Barrios' symptoms testimony, the ALJ noted that the alleged severity of Barrios's symptoms was not supported by Barrios' level of treatment. For instance, the ALJ explained that Barrios took medication, to which he responded well, according to the records. (*Id.* at 21). Further, the ALJ noted that Barrios did not attend mental health therapy or surgery, noting that Barrios "has not generally received the type of medical treatment one would expect for a totally disabled individual. Specifically, no surgery was performed for intracranial hematoma and no referrals for mental health treatment were made." (*Id.*) The ALJ also found that Barrios was "more abled-bodied" than he alleged. In determining that, the ALJ considered Barrios' engagement in daily activities, including assisting his parents in helping take care of his younger siblings, using public transportation, occasionally doing yard work and seeking to cut the neighbors' grass, and his ability to cook, amongst other things. (*Id.* at 22.) The Court finds the ALJ's consideration and assessment of such activities proper. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012), *superseded by regulation on other grounds*, (explaining that it is proper for an ALJ to consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms" in assessing the credibility of a claimant's testimony regarding the intensity of symptoms.) Accordingly, the ALJ did not err in discrediting

8

Barrios' symptom testimony.

### C. Third-party Witness Testimony

Barrios argues that the ALJ improperly rejected his brother's, Rafael Barrios Garcia's, questionnaire detailing Barrios' limitations. The ALJ summarized Garcia's lay testimony, finding that it did not warrant a modification to the RFC. (*See* AR at 24.) However, as Barrios correctly points out, the ALJ erred in not giving a reason for rejecting Garcia's testimony. Notwithstanding that, the Court finds such error was harmless. Garcia's testimony describing Barrios' daily activities and impairment was similar to Barrios' testimony that ALJ found unpersuasive in light of the evidence in the record. *Molina*, 674 F.3d at 1121-22 (explaining that an "ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'") Thus, the Court upholds the ALJ's determination that Garcia's testimony does not change Barrios' RFC.  !

### D. ALJ's Step Five Finding

Barrios argues that the ALJ's step five finding is not supported by substantial evidence because the ALJ did not set out all restrictions and limitations to the vocational expert. Barrios simply rehashes his argument that the ALJ's decision did not account for all of his limitations because the ALJ improperly rejected medical opinions and Barrios' symptoms testimony. Given the above analysis, the Court finds this argument unpersuasive. The ALJ properly considered the medical and testimonial evidence in the record. Accordingly, the ALJ's step five decision is based on substantial evidence.

**IV. CONCLUSION**

Based upon the foregoing, the Court **AFFIRMS** the ALJ's decision. Accordingly, the Court **DENIES** plaintiff's motion for summary judgment and **GRANTS** defendant's cross-motion for summary judgment.

The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff and to close this case.

This Order terminates Docket Numbers 21 and 24.

**IT IS SO ORDERED.**

Dated: September 22, 2021

                                                                    _____
                                                                    **YVONNE GONZALEZ ROGERS**
                                                                    **UNITED STATES DISTRICT COURT JUDGE**